IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RACHEL ANN ARNOLD,       )<br>                                         )<br>          **Plaintiff,**         )<br>                                         )<br>v.                                    )<br>                                         )<br>KILOLO KIJAKAZI,          )<br>**Commissioner of the Social**  )<br>**Security Administration,** [1]  )<br>                                         )<br>          **Defendant.**       ) | Case No. CIV-20-53-JFH-SPS |

## REPORT AND RECOMMENDATION

The claimant Rachel Ann Arnold requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-four years old at the time of the most recent administrative hearing (Tr. 1403). She completed high school while enrolled in special education courses and has no past relevant work (Tr. 260, 396-421, 1391). Any work the claimant has performed previously was under the supervision of a job coach. The claimant alleges inability to work since February 11, 2014, due to ADHD, depression, anger management, learning disability, inability to read or write above a first-grade level, bipolar disorder, and anger problems (Tr. 259, 1379).

## Procedural History

On February 11, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 8, 2016 (Tr. 15-26). The Appeals Council denied review, but this Court reversed in Case No. CIV-17-388-RAW-KEW and remanded the case to the ALJ for further consideration of the opinion evidence in the record, on March 21, 2019 (Tr. 1452-1462). On remand, ALJ Lantz McClain held a second administrative hearing and again determined the claimant was not

disabled in a written opinion dated October 29, 2019 (Tr. 1377-1392). The Appeals Council again denied review, so ALJ McClain's 2019 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

ALJ McClain made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c), *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand/walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Additionally, he found that she was capable of simple, repetitive tasks and only occasional interaction with supervisors and co-workers, but that she was unable to work with the general public and her job could not require reading as part of her work (Tr. 1382-1383). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, cleaner II and dishwasher (Tr. 1391-1392).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the opinions of three consultative examiners, and (ii) failing to consider a closed period of disability. The undersigned Magistrate Judge agrees with the claimant's first contention and further finds the ALJ erred at step five with regard to the jobs identified, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of mood disorder, major depressive disorder, bipolar disorder, anxiety disorder, borderline intellectual

functioning, history of a learning disorder, and obesity (Tr. 1379). The relevant evidence demonstrates that the claimant was in special education classes all through high school, and that she was only able to obtain employment in high school with vocational training and a job coach (Tr. 394-410).

On February 5, 2008, Dr. Keith Green produced a "Psychological Report" on the claimant in her pursuit of job placement with a job coach through Rehabilitation Services (Tr. 552). Dr. Green administered the WAIS-III and the claimant obtained a verbal IQ of 68, a performance IQ of 78, and a full-scale IQ of 70 (Tr. 554). He stated this placed her in the borderline range of intellectual functioning, or the 2nd percentile (Tr. 554). The difference between the verbal and performance score indicated an impairment in her verbal-ideational abilities, and he stated she was best suited for unskilled jobs which she could learn by imitation or hands-on experience under close supervision, *i. e.*, a job coach (Tr. 555). Dr. Graybill stated that the claimant would likely deteriorate in times of stress, but that she may be able to maintain employment with "constructive intervention" (Tr. 555).

On February 18, 2009, Dr. Todd Graybill administered a series of tests as to the claimant's intellectual functioning. The claimant scored a verbal IQ of 76, a performance IQ of 83, and a full-scale IQ of 77 on the WAIS-III (Tr. 423). This placed her in the borderline mentally retarded range of intellectual functioning (Tr. 423). Dr. Graybill noted that the claimant was able to understand, retain, and follow simple instructions, and her attention span and concentration were significantly impaired (Tr. 424). He did not believe she was capable of managing her own benefits (Tr. 424).

The claimant received outpatient treatment over a number of years at CREOKS Mental Health Services in Okmulgee, Oklahoma. Her diagnoses included bipolar disorder and ADHD (Tr. 427, 495-527, 611-696, 1634-1781). Most of the claimant's treatment notes revolved around medication follow-up appointments and consisted of general check-box notations as to the claimant's status (Tr. 1634-1781).

On June 1, 2013, Licensed Professional Counselor Susan Odunukwe, Ph.D., conducted a mental status examination of the claimant (Tr. 441). Taking note of the claimant's reported reading disability, Dr. Odunukwe stated that it was unlikely the claimant would be able to cope with employment and child-rearing responsibilities given her tendency to get easily frustrated and overwhelmed (Tr. 446). She then contradictorily stated that the claimant had no disabling conditions that would interfere with her ability to work (Tr. 446).

On June 15, 2014, Dr. Timothy Doty, Psy.D., conducted a consultative examination of the claimant's mental status (Tr. 533). He assessed her with a mood disorder not otherwise specified and borderline intellectual functioning (Tr. 534). He found that the claimant had moderate ability to engage in work-related mental activities, to understand work-related mental tasks, to socially interact and adapt, and in memory performance. He further stated that her ability to sustain concentration in a real-world situation appeared to be a challenge (Tr. 535). Dr. Doty stated that the claimant was likely capable of simple tasks and may be capable of performing on a job where her abilities were matched, but that she would benefit from seeking job coaching, vocational rehabilitation, or job-corps type interventions and assistance (Tr. 535).

On February 9, 2016, Dr. Larry Vaught completed a Medical Source Statement (MSS) as to the claimant's mental impairments, in which he indicated that she had marked limitations in the ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions (Tr. 1366). Additionally, he stated she had mild impairments in the ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related activities (Tr. 1366). Furthermore, he indicated that she had marked limitations in the ability to work with the general public, supervisors, and co-workers, and that she had a marked limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 1367). He likewise administered the WAIS-III, and found she obtained a verbal IQ of 72, a performance IQ of 76, and a full-scale IQ of 72 (Tr. 1370). He noted her reading skills as "extremely deficient," and at a first-grade level (Tr. 1371). Further testing of the WRAT-III indicated the claimant may be overwhelmed by stress or adverse circumstances, may have difficulty processing emotional stimuli, and that she obtained a borderline score in motor speed and dual processing (Tr. 1371-1372). Dr. Vaught assessed her with borderline intellectual function (Tr. 1373).

State reviewing physicians determined that the claimant had sufficient concentration and memory to do simple, repetitive tasks but no complex tasks, and that she had the ability to undertake a variety of everyday life demands (Tr. 109, 123). She was limited however, in the ability to work with the general public (Tr. 109, 123).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 1379-1391). The ALJ

specifically noted numerous treatment records completed by nurse practitioners at CREOKS (Tr. 1384-1389). ALJ McClain afforded little weight to Dr. Green's opinion because it was prior to the alleged onset date, went to an issue reserved to the Commissioner, and was inconsistent with the objective medical evidence. To support this inconsistency, the ALJ pointed to a 2019 treatment note by a nurse practitioner in which she checked boxes indicating the claimant's insight was adequate, she was fully oriented, her recent and remote memory was adequate, her though process was organized/coherent, and her attention span and concentration was adequate (Tr. 1389). Indeed, the ALJ cited a number of these nurse practitioner treatment notes in which boxes were checked in various categories to undermine Dr. Green's opinion. Additionally, the ALJ erroneously stated that the *claimant* had worked as a store manager, despite a treatment note clearly indicating that the claimant's *husband* was working as a store manager (Tr. 671, 1385). As to Dr. Doty, the ALJ afforded his opinion partial weight because the limitation to simple, repetitive tasks was consistent with a nurse practitioner's treatment record of checked boxes which included, *inter alia*, that the claimant's attention and concentration was adequate (Tr. 1390). As to Dr. Vaught, the ALJ assigned his opinion little weight, finding it inconsistent with the "objective" evidence that included a nurse practitioner note of a checked box indicating, *inter alia*, "adequate insight, recent and remote memory, and attention and concentration" (Tr. 1390). The ALJ made no mention of Dr. Odunukwe's assessment. The ALJ afforded partial weight to the state agency psychologist opinions to the extent they coincided with the assigned RFC because one 2014 treatment note from a nurse practitioner showed the claimant's "recent memory, remote memory, attention span,

and concentration was adequate" (Tr. 1389). The ALJ ultimately concluded that the claimant was not disabled (Tr. 1392).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."[3] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added] (*citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995)). Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300-1301 (10th Cir. 2003) (*citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]). Here, the ALJ (again) wholly failed to apply the *Watkins* factors to the opinions of Dr. Green, Dr. Doty, and Dr. Vaught. Although Dr. Green's opinion pre-dates the alleged onset date, his opinion may provide a longitudinal

---

[3] Here, the claimant's application for Title XVI benefits was filed on February 11, 2014. The undersigned Magistrate Judge recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. § 416.920c, which is not applicable here.

assessment of the claimant's abilities to perform work, even if his ultimate conclusion is in the realm of the ALJ. And the ALJ's comparison of these in-depth consultative examinations to one-time treatment notes from nurse practitioners who checked boxes as to the claimant's ability to pay attention is insufficient to discredit their professional assessments. Indeed, it appears the ALJ discredited all three opinions separately while ignoring how all three *supported* each other as to the claimant's limitations with regard to stress and the need for supervision/job coaching. The undersigned Magistrate Judge finds that such picking and choosing is inappropriate and indicates a failure to conduct the proper analysis. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Since the ALJ failed to conduct the appropriate analysis regarding the opinion evidence in the record, his RFC thus fails to account for *all* the evidence in the record. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by

providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *5.

Finally, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles ("DICOT")] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760-762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Here, neither of the jobs identified by the vocational expert at the administrative hearing, and ultimately adopted by the ALJ, account for the claimant's inability to read. The jobs of cleaner II, DICOT § 919.687-014, and dishwasher, DICOT § 318.687-010, both require a language Level 1 of reading, which means that the claimant must be able to "recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers." This is an identifiable conflict with the RFC assigned in

this case, for which the ALJ has not elicited a reasonable explanation. This is further error because "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform in light of the entirety of her RFC, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**